## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

——————————————————————

**CARLOS ISAAC TOSEAFA**,
9205 Livery Lane, Apt. 1
Laurel, Maryland 20723

      *On Behalf of Himself and*
      *All Others Similarly Situated,*

         PLAINTIFF,

   v.

**REGAL LIMOUSINE OF
WASHINGTON, DC, INC.**
207 East Holly Avenue, Suite 110
Sterling, Virginia 20164,

SERVE:  Habib A. Khan
2027 12th Street, NW
Washington, DC 20009

     AND

**HABIB A. KHAN**,
2027 12th Street, NW
Washington, DC 20164

        DEFENDANTS.

——————————————————————

Case Number:

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COLLECTIVE ACTION COMPLAINT

1.     Plaintiff Carlos Isaac Toseafa, ("Plaintiff"), by and through undersigned counsel, on behalf of himself and all others similarly situated, hereby submits his Collective Action Complaint against Defendants (1) Regal Limousine of Washington, D.C., Inc. ("Regal") and (2) Habib A. Khan ("Khan")(together "Defendants"), to recover damages under the Federal Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and for unpaid overtime wages and damages

under the D.C. Minimum Wage Act Revision Act of 1992, D.C. Code §§ 32-1001 et seq. ("DCMWA") as set forth below.

## PARTIES AND JURISDICTION

2.     Plaintiff is an adult resident of the State of Maryland.  At all times relevant to this action, Plaintiff performed work duties for Defendants substantially and primarily in the District of Columbia.  By acting as the named Plaintiff in this action, Plaintiff hereby affirms his consent to participate as a plaintiff in a collective action under the FLSA and DCMWA.

3.     Regal is a corporation formed under the laws of the District of Columbia with its principal office located Sterling, Virginia.  At all times relevant, Regal continuously operated substantial business operations in the District of Columbia.  At all times relevant, Regal was Plaintiff's "employer" for purposes of the FLSA and DCMWA.

4.     At all times, Khan was the President, primary owner, and in charge of the day-to-day operations of Regal.  At all times, Khan was Plaintiff's supervisor and made all decisions relating to Plaintiff's rate and method of pay.  At all times, Khan was Plaintiff's "employer" for purposes of the FLSA and DCMWA.

5.     At all times relevant, Defendants were engaged in commerce or in the production of goods for commerce within the meaning of § 3(s)(1) of the FLSA (29 U.S.C. § 203(s)(1)).

6.     At all times relevant, Defendants qualified as an "enterprise" within the meaning of § 3(r) of the FLSA (29 U.S.C. § 203(r)).

7.     At all times relevant, Plaintiff and all other sedan or "limo" drivers were individual employees engaged in commerce or the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

8.     This Court has jurisdiction over Defendants pursuant to § 16(b) of the FLSA, 29

U.S.C. § 216(b), and 28 U.S.C. §§ 1331 and 1337 relating to "any civil action or proceeding

arising under any Act of Congress regulating commerce."  This Court has supplemental

jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a).  Plaintiff's state

law claim is closely related to Plaintiff's federal claim, as all of Plaintiff's claims share common

operative facts.  Resolving all federal and state claims in a single action serves the interests of

judicial economy, convenience and fairness to the parties.  Venue is proper pursuant to 28 U.S.C.

§ 1391.

### PLAINTIFFS WERE AT ALL TIMES EMPLOYEES

9.      Plaintiff was employed by Defendants as a sedan or "limo" driver from about

March 20, 2011 through about February 15, 2012.

10.     At all times while Plaintiff was employed by Defendants, Plaintiff and other

drivers were legally "employees" but was misclassified by Defendants as an independent

contractors.

11.      At all times, Defendants controlled all aspects of Plaintiff's job duties and the job

duties of other drivers through threats and strictly enforced employment rules.

12.     Defendants hired Plaintiff and the other drivers and, at all times, had the ability to

discipline, fine, fire, and adjust Plaintiff and the other drivers' schedules.

13.     Defendants, at all times, supervised Plaintiff's work duties and the job duties of

all other drivers to make sure Plaintiff's job performance and the job performance of all other

drivers was of sufficient quality and to ensure that Defendants' limousines were continuously

disbursed throughout the Washington, D.C. metropolitan area and thus ready and available on

short notice to retrieve and transport new fares.

14.     At all times, Plaintiff and other drivers' pay and opportunity for wages was

limited to the pay method and work schedules set exclusively by Defendants.

15.     Defendants controlled all aspects of setting and enforcing Plaintiff's and other drivers' work schedule.

16.     Plaintiffs and other drivers did not share in the profits of Defendants.

17.     At no time did Plaintiffs or other drivers make a financial investment in Defendants' company or any equipment belonging to Defendants.

18.     To perform the work duties that Plaintiff and other drivers performed for Defendants, Plaintiffs and other drivers did not have or need any required certificate, education, or specialized training other than a clean drivers' license.

19.     At all times, Defendants were in the business of operating a sedan and limo service and at all times Plaintiff and other drivers' job duties for Defendants were directly related to providing limo and sedan driving services for Defendants' customers.

20.     At all times, Plaintiff and other drivers performed work duties or were contractually engaged to be waiting to perform work duties for at least seventy-two (72) hours per week, and for longer periods as job assignments extended beyond set schedules.

21.     With regard to Plaintiff and other drivers' duties for which Plaintiff and other drivers were contractually engaged to be waiting, Khan and other agents under Defendants' control instructed and demanded that, while Plaintiff and other drivers were awaiting calls from Defendants' dispatchers, it was Plaintiff and other drivers' strict work responsibility to remain at specific landmarks or locations and in specific geographic areas and Plaintiff and other drivers were required at all times during shifts to physically remain in or around Defendants' provided vehicles.

22.     Defendants maintaining their fleet in various locations allowed Defendants to

respond to last-minute reservations quickly, thereby ensuring that transportation jobs were not forfeited to other limousine operators or to taxicab drivers.

23.     Defendants enforced that Plaintiff and other drivers remained at specific landmarks or in or around their vehicle in or around specific geographic areas through a closely monitored GPS system on the vehicles and/or on work phones for which Plaintiff and other drivers were required to pay.

24.     At all times, Plaintiff and other drivers regularly and customarily worked about seventy-two (72) or more hours per week and Defendants had knowledge of all hours Plaintiff and other drivers worked and suffered or permitted Plaintiff to work about seventy-two (72) or more hours per week.

25.     Defendants had knowledge of all hours Plaintiff and other drivers worked because Defendants set Plaintiff and other drivers' work schedule as well as monitored Plaintiff and other drivers' GPS tracking and the tracking devices.

26.     At all times, Defendants paid Plaintiff and other drivers as "piece-rate" employees.  The rate at which Defendants paid Plaintiff and other drivers was in the amount of fifty percent (50%) of the gross receipts received by Defendants for each limo ride Plaintiff and other drivers provided to customers.

27.     In a typical week, Plaintiff earned piece-rate wages (before unreimbursed deductions) in the amount averaging approximately seven hundred fifty dollars ($750.00).

28.     Plaintiff and other drivers did not actually earn seven hundred fifty dollars ($750.00) each week.  Each week, Defendants required Plaintiff and other drivers to pay for Defendants' work costs (Defendants' overhead) including gasoline, parking, Motorola telephone, amenities for the vehicle, and tolls.  These unreimbursed deductions amounted to a weekly

deduction average in the amount of approximately three hundred dollars ($300.00).

29.     The consequence of Defendants' failure and refusal to reimburse Plaintiff and

other drivers was that Plaintiff and other drivers received actual wages in the amount of about

four hundred fifty dollars ($450.00) per week ($750.00 wages - $300.00 deductions = $450.00).

30.     The maximum-hours provision of the FLSA requires employers to pay any

employee who is covered by the Act "not less than one and one-half times the *regular rate* at

which he is employed" for all hours worked in excess of forty in a week. 29 U.S.C. § 207(a)(1)

(emphasis supplied).

31.     According to Department of Labor regulations and Supreme Court precedent, the

"regular rate" of pay for FLSA purposes is an "actual fact" that "must be drawn from what

happens under the employment contract," rather than from any agreement between the employer

and employee. 29 C.F.R. § 778.108.

32.     "Once the parties have decided upon the amount of wages and the mode of

payment[,] the determination of the regular rate becomes a matter of mathematical computation,

the result of which is unaffected by any designation of a contrary, 'regular rate' in [a] wage

contract [ ]." *Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S. 419, 424-25 (1945).

33.     Where there is a clear mutual understanding of the parties that the fixed salary is

compensation (apart from overtime premiums) for the hours worked each workweek, whatever

their number, rather than for working 40 hours or some other fixed weekly work period, such a

salary arrangement is permitted by the Act *if* the amount of the salary is sufficient to provide

compensation to the employee at a rate not less than the applicable minimum wage rate for every

hour worked in those workweeks in which the number of hours he works is greatest, *and if* he

receives extra compensation, in addition to such salary, for all overtime hours worked at a rate

not less than one-half his regular rate of pay. *Hunter v. Sprint Corp.*, 453 F.Supp.2d 44, 58 (D.D.C. 2006).

34.      At no time during the period of Plaintiffs employment did Plaintiff or, on information and belief, any other driver and Defendants reach, or even engage in any discussions relating to, a clear and mutual understanding that Plaintiff and other drivers' weekly wages were intended to compensate Plaintiff and other drivers at a regular non-overtime rate of pay for hours worked each week less than forty (40) and at a different overtime rate of one-and-one-half (1½) times Plaintiff and other drivers' regular rate of pay for hours worked each week in excess of forty (40).

35.      At no time during the period of Plaintiff's employment did Defendants ever, in addition to Plaintiff's "piece rate" wages, pay extra wages to Plaintiff or, on information and belief, other drivers for overtime hours worked in excess of forty (40) at a rate not less than one-half Plaintiff and other drivers' regular rate of pay.

36.      In legal truth, Defendants paid Plaintiff and other drivers their flat wages for only non-overtime hours worked each week (those less than forty (40)) and paid Plaintiff and other drivers no wages at all for hours worked each week in excess of forty (40).

37.      Defendants should have paid Plaintiff and other drivers at the rate of one-and-one-half (1½) times their regular rate of pay for all hours worked each week in excess of forty (40).

38.      At no time during Plaintiff's employment did Plaintiff or any other driver (who also drove a "sedan" or similar vehicles used to transport eight (8) or less passengers including the driver) perform work duties that would make Plaintiff or that driver exempt from the overtime requirement of the FLSA or DCMWA.

39.      At no time during Plaintiff's employment did Plaintiff or any other driver perform

work duties that would make Plaintiff or that driver exempt from the minimum wage

compensation requirement of the FLSA or DCMWA.

## COLLECTIVE ACTION ALLEGATIONS

40.    Plaintiff is pursuing this action as an FLSA and DCMWA collective action on behalf of

himself and all other similarly situated individuals who drove a "sedan" or similar vehicles used to

transport eight (8) or less passengers including the driver

41.    In the present case, the questions of law or fact common to the members of the class

predominate over any questions affecting only individual class members.  The essence of this entire case

is that the Plaintiff and other similarly situated individuals were (1) misclassified as independent

contractors and (2) were not paid wages in compliance with the minimum wage and overtime

compensation requirements of the FLSA and DCMWA.

42.    Common to Plaintiff and all class members is that each individual received wages and

overtime compensation from Defendants at a rate less than what is required by Federal and District of

Columbia Law.

43.    In the present case, the number of class members is believed to exceed thirty (30) current

and former similarly situated individuals.

42.    All class members are readily identifiable from information and records, on information

and belief, in the possession and control of Defendants.

## CAUSES OF ACTION

### COUNT I
### Violation of Federal Fair Labor Standards Act
### (Overtime)

43.    Plaintiff realleges and reasserts each and every allegation set forth in Paragraphs 1-42

above, as if each were set forth herein.

44.    Section 207(a)(1) of the FLSA provides that no employer shall employ any of its employees for a workweek longer than forty (40) hours unless such employee receives compensation for her employment in excess of the hours above specified at a rate not less than the <u>higher of</u> one-and-one-half (1½) times the regular rate at which he is employed or one-and-one half times the Federal Minimum Wage.

45.    At all times, Plaintiff and other drivers were "employees" covered by the FLSA, 29 U.S.C. § 207(a)(1), and both Defendants were Plaintiff and other drivers' "employers" under FLSA, 29 U.S.C. § 207(a)(2).

46.    Defendants, as Plaintiff and other drivers' employers, were obligated to compensate Plaintiff and other drivers at the overtime rate of one-and-one-half (1½) times <u>the higher of</u> Plaintiff and other drivers' regular rate of pay or one-and-one half (1½) times the Federal Minimum Wage for all hours worked per week in excess of forty (40).

47.    As set forth above, while in Defendants' employ, Plaintiff and other drivers typically and customarily worked about thirty-two (32) or more hours of overtime, each week.

48.    As set forth above, Defendants have failed and refused to compensate Plaintiff and other drivers properly, and as required by the FLSA, for all overtime hours worked each week in excess of forty (40).

49.    Defendants' failure and refusal to pay Plaintiffs and other drivers as required by the FLSA for overtime hours worked each week was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiff and all other similarly situated drivers who join this action under Count I for all unpaid overtime wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems

appropriate.

## COUNT II
### Violation of D.C. Minimum Wage Act Revision Act of 1992
### (Overtime)

50.     Plaintiff re-alleges and reasserts each and every allegation set forth in Paragraphs

1-49 above, as if each were set forth herein.

51.     Plaintiff and other drivers were Defendants' "employees," and both Defendants

were Plaintiff and other drivers' "employers" within the meaning of the DCMWA, D.C. Code

§§ 32-1001 *et seq.*

52.     Defendants, as Plaintiff and other drivers' employers, were obligated to compensate

Plaintiff and other drivers at the overtime rate of one-and-one-half (1½) times the higher of Plaintiff and

other drivers' regular rate of pay or one-and-one half (1½) times the District of Columbia Minimum

Wage for all hours worked per week in excess of forty (40).

52.     As set forth above, while in Defendants' employ, Plaintiff and other drivers typically and

customarily worked about thirty-two (32) or more hours of overtime, each week.

53.     As set forth above, Defendants have failed and refused to compensate Plaintiff and other

drivers properly, and as required by the DCMWA, for all overtime hours worked each week in excess of

forty (40).

54.     Defendants' failure and refusal to pay Plaintiffs and other drivers as required by the

DCMWA for overtime hours worked each week was willful and intentional, and was not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiff and all other similarly

situated drivers who join this action under Count II for all unpaid overtime wages in such amounts as are

proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post- judgment),

reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems

appropriate.

## COUNT III
### Violation of Federal Fair Labor Standards Act
### (Minimum Wage)

55.     Plaintiff re-alleges and reasserts each and every allegation set forth in Paragraphs 1-54 above as if each were set forth herein.

56.     Section 206(a)(1) of the FLSA provides that no employer shall employ any employee for an hourly wage of less than the Federal Minimum Wage, $7.25 per hour.

57.     At all times, Plaintiff and all other drivers were "employees" covered by the FLSA, 29 U.S.C. § 206(a)(1).

58.     At all times, both Defendants were Plaintiff and other drivers' "employers" under the FLSA.

59.     Defendants, as Plaintiff and other drivers' employers, were obligated to compensate Plaintiff and all other drivers for all non-overtime hours worked at an hourly rate not less than the Federal Minimum Wage.

60.     If, in the alternative, Defendants did compensate Plaintiffs and all other drivers by way of their weekly wages for all hours worked, including overtime hours worked, Plaintiff and other drivers' typical hourly rate would be calculated at or about $6.25 per hour ($450.00 per week / 72 hours per week = $6.25 per hour).

60.     Thus, Defendants paid wages to Plaintiff and other similarly situated drivers for non-overtime hours worked at an hourly rate less than the Federal Minimum Wage ($7.25 per hour).

61.     Defendants have failed to compensate Plaintiff and other drivers at an hourly rate at least equal to the Federal Minimum Wage as required by the FLSA for numerous hours worked.

62.     Defendants' failure to pay compensation to Plaintiff and other drivers as required by the

11

FLSA was willful and intentional, and not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiff and all other similarly situated drivers who join this action under Count III for all unpaid wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

**COUNT IV**
**Violation of Federal Fair Labor Standards Act**
**(Minimum Wage)**

63.     Plaintiff re-alleges and reasserts each and every allegation set forth in Paragraphs 1-62 above as if each were set forth herein.

64.     The DCMWA provides that no employer shall employ any employee for an hourly wage of less than the District of Columbia Minimum Wage, $8.25 per hour.

65.     At all times, Plaintiff and all other drivers were "employees" covered by the DCWMA.

66.     At all times, both Defendants were Plaintiff and other drivers' "employers" under the DCMWA.

67.     Defendants, as Plaintiff and other drivers' employers, were obligated to compensate Plaintiff and all other drivers for all non-overtime hours worked at an hourly rate not less than the District of Columbia Minimum Wage.

68.     If, in the alternative, Defendants did compensate Plaintiffs and all other drivers by way of their weekly wages for all hours worked, including overtime hours worked, Plaintiff and other drivers' typical hourly rate would be calculated at or about $6.25 per hour ($450.00 per week / 72 hours per week = $6.25 per hour).

69.     Thus, Defendants paid wages to Plaintiff and other similarly situated drivers for non-overtime hours worked at an hourly rate less than the District of Columbia Minimum Wage ($8.25 per

hour).

70.     Defendants have failed to compensate Plaintiff and other drivers at an hourly rate at least equal to the District of Columbia Minimum Wage as required by the DCMWA for numerous hours worked.

71.     Defendants' failure to pay compensation to Plaintiff and other drivers as required by the DCMWA was willful and intentional, and not in good faith.

WHEREFORE, Defendants are liable, jointly and severally, to Plaintiff and all other similarly situated drivers who join this action under Count IV for all unpaid wages in such amounts as are proven at trial, plus an equal amount in liquidated damages, interest (both pre- and post- judgment), reasonable attorney's fees, the costs of this action, and any other and further relief this Court deems appropriate.

Respectfully submitted,

Gregg C. Greenberg, Bar No. MD17291
The Zipin Law Firm, LLC
836 Bonifant Street
Silver Spring, Maryland 20910
301-587-9373 (ph)
301-587-9397 (fax)
Email:  ggreenberg@zipinlaw.com

*Counsel for Plaintiff*